**SECOND DIVISION
MILLER, P. J.,
MARKLE and LAND, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 25, 2024**

# In the Court of Appeals of Georgia

A24A0093. CLARKE v. DYE-MASTER GROUP, INC. et al.

MARKLE, Judge.

After Sandra Clarke failed to pay Dye-Master Group, Inc. and American Property Restoration, Inc. (collectively "Appellees") for renovation work completed on her home, the Appellees sued Clarke for breach of contract, conversion, violations of the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act, and to foreclose on liens they filed on the property.[1] A jury found in Appellees' favor, and awarded more than $365,000 in damages and attorney fees. Clarke now appeals, arguing that the trial court erred by (1) denying her motion for summary judgment;

---

[1] Appellees originally named Clarke's mortgage company, Specialized Loan Servicing, LLC, in the complaint because it held some of the funds, but they later dismissed that defendant.

(2) granting a motion for contempt and striking her pleadings due to discovery violations; (3) denying her motion to dismiss or for judgment on the pleadings; (4) granting a motion in limine to exclude evidence showing that Dye-Master Group was not licensed to act as a contractor; (5) denying her motion to recuse based on comments the trial court made during a motions hearing; and (6) denying her motion for judgment notwithstanding the verdict. For the reasons that follow, we affirm.

The record shows that, in 2016, Clarke's home was damaged by fire, and she hired Dye-Master Group ("DMG") to perform remediation services.[2] During the clean-up, Clarke asked DMG about some renovation work, and DMG advised her that it was not a licensed contractor. DMG recommended American Property Restoration ("American"), which was licensed as a contractor. DMG and American then entered into an agreement in which DMG would finance the renovation, American would obtain the permits and perform the work, and the two companies would split the profits. Clarke's insurance company prepared an estimate of the repairs, which Clarke gave to DMG. DMG and American prepared their own estimate, matching the same amount, and Clarke approved it. DMG then provided funding to American to cover

---

[2] DMG completed this work and was paid.

the renovation work. Clarke later made changes that added to the cost, bringing the total to $198,498.75.

After American completed the work and the insurance company verified it, Clarke signed a certification of completion, indicating that she was satisfied with the renovation. Clarke's insurance company then released the funds to Clarke's mortgagor. Despite her acceptance of the work, however, Clarke notified her mortgage company that she had already paid the contractor, and she requested that payment be sent to her directly.[3] Once she received the money from the mortgagor, Clarke deposited the funds into her own bank account, and refused to pay DMG.

DMG sent Clarke a demand letter and, when she failed to remit payment, DMG and American filed suit against Clarke for breach of contract, conversion, and RICO violations.[4] They also placed liens on the property. Clarke answered and filed a counterclaim, arguing that the allegations in the complaint demonstrated that DMG

---

[3] Clarke did not merely make a single misleading statement to the mortgagor. She made several misrepresentations that she and the contractor were in dispute over the work, that the dispute had been resolved, and that she had already paid the contractor for the work. These statements are unsupported by the record.

[4] The Appellees also pled, in the alternative, unjust enrichment, quantum meruit, and money had and received.

violated various statutes, including OCGA § 43-41-17, by providing renovation work without the proper license.[5]

During her deposition testimony, Clarke stated that she had evidence showing that she had paid DMG and purchased materials consistent with the information she gave her mortgage company. She further stated that the work performed had been substandard, requiring costly repairs. Clarke agreed to provide copies of those financial documents to the Appellees. But after the deposition, counsel withdrew, and the documents were not produced. DMG then sent Clarke's new counsel another request, but he failed to submit any responses despite his assurances that he would do so. Appellees then moved for sanctions due to Clarke's failure to respond to discovery requests. Counsel responded that there were no documents that were relevant to the request, and that Clarke had been unable to locate any of the financial records. Counsel then argued that DMG acted unlawfully by representing that it had a license to provide contractor services, and that, because it was in violation of the licensing requirements, it had no right to seek payment or to obtain discovery.

---

[5] Clarke made additional allegations that DMG improperly acted as an insurance adjustor, but she seems to have abandoned that argument during the proceedings and on appeal.

Clarke then moved for summary judgment, arguing that DMG violated licensing regulations and thus any contract was unenforceable. In response, the Appellees argued that there were no such violations because American completed all the work, American was properly licensed, and American and DMG entered into a joint venture for completion of the renovations. Clarke later supplemented her motion to include the outcome of a complaint she filed with the state licensing board, which resulted in DMG agreeing to a cease and desist order.

Following a hearing, the trial court denied the motion for summary judgment, and ordered Clarke to respond to the pending discovery request within 30 days. Despite the trial court's order, Clarke did not provide any discovery, and the Appellees filed a second motion for sanctions and for contempt. The trial court deferred its ruling on the motion for sanctions and contempt and again ordered Clarke to comply with discovery. When she failed to do so, the trial court granted the motion for sanctions, noting that the discovery request had been pending for three years and that Clarke had twice ignored the trial court's orders to respond. Accordingly, the trial court struck Clarke's answer and entered a default judgment as to liability. The trial

court further found Clarke in criminal contempt for ignoring the court's order, and ordered her to pay a fine.

Clarke moved to vacate the order under OCGA § 9-11-60 (d) (3), and to dismiss the complaint, or to grant judgment on the pleadings. In doing so, Clarke repeated her argument that DMG violated licensing regulations and thus could not enforce the contract. The trial court denied the motion, finding that the motion improperly relied on documents outside the pleadings. The court further found that relief from judgment under OCGA § 9-11-60 was not warranted.

Prior to trial, the Appellees filed a motion in limine to exclude any evidence of the cease and desist order, as well as any argument that they could not collect because DMG was unlicensed. The trial court granted the motion.

At trial, Clarke again raised the issue of DMG's alleged violation of licensing requirements and argued that she should be permitted to submit evidence to show that the Appellees failed to state a claim and to have a jury instruction on the licensing violations under OCGA § 43-41-17. The trial court reminded Clarke that she was in default and the issue of liability was not before the jury. DMG and American then testified to the amount of damages, and the Appellees' attorneys testified to the

6

amount of their fees and expenses. The jury ultimately awarded damages, including attorney fees, expenses, interest, and punitive damages, in excess of $365,000. Before the trial court entered judgment, Clarke moved for judgment notwithstanding the verdict (JNOV). Thereafter, the trial court entered judgment, without expressly denying the motion for JNOV, and this appeal followed.

1. *Summary judgment.*

Clarke first argues that the trial court erred by denying her motion for summary judgment because DMG was not licensed to act as a contractor; the agreement between DMG and American did not create a valid joint venture; and as a result, the Appellees could not enforce the contract. We disagree.

We review the denial of a motion for summary judgment de novo, viewing the evidence and drawing all reasonable inferences from it in the light most favorable to DMG and American as the nonmovants. *Five Star Athlete Mgmt. v. Davis*, 355 Ga. App. 774, 775 (845 SE2d 754) (2020). "Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Citation omitted.) Id.

> Generally, a ruling on a motion for summary judgment becomes moot following the verdict and judgment. However, a party may appeal

the denial of summary judgment as part of the direct appeal from the final judgment if the legal issues raised and resolved in denying the motion for summary judgment were not considered at trial.

(Citation and punctuation omitted.) *Smith v. Saulsbury*, 286 Ga. App. 322, 323 (1) (a) (649 SE2d 344) (2007); see also *City of College Park v. City of Sandersville*, 361 Ga. App. 529, 531 (1) (864 SE2d 680) (2021). Here, the jury did not consider whether the statute barred the Appellees' claims. Thus, we may reach this issue in Clarke's direct appeal. *Smith*, 286 Ga. App. at 323 (1) (a); see also *Coregis Ins. Co. v. Nelson*, 282 Ga. App. 488, 489 (1) (639 SE2d 365) (2006).

Clarke contends that she was entitled to summary judgment based on violations of OCGA § 43-41-17. That statute requires a contractor's license for anyone performing contracting work. OCGA § 43-41-17 (b). "Contracting" is defined as, inter alia, "[t]he offering of contracting services and the negotiation of or bid or proposal for engagement or a contract requiring performance of these services[.]" OCGA § 43-41-2 (3); see also OCGA § 43-41-2 (4).

Generally, OCGA § 43-41-17 (b) bars enforcement of a contract where a license was required and the performing party did not possess one. *Restor-It v. Beck*, 352 Ga. App. 613, 623 (6) (835 SE2d 398) (2019); see also *Bennett v. Cashin*, 370 Ga. App. 335,

8

336-337 (2) (897 SE2d 483) (2024). However, "[n]otwithstanding any other provision of law to the contrary, if a contract is rendered unenforceable under this subsection, . . . [t]his subsection shall not affect the rights of parties other than the unlicensed contractor to enforce contract, lien, or bond remedies." OCGA § 43-41-17 (b).

Any determination of whether DMG violated the statutory licensing requirements is only relevant if it engaged in contracting work. The evidence presented at the summary judgment stage, viewed in the light most favorable to DMG and American, creates genuine issues of material fact as to whether DMG engaged in conduct that qualified as "contracting." Clarke points to the Appellees' own allegations, the estimate submitted, and to the lien DMG filed indicating its was licensed. She further contends that the so-called "joint venture" was not valid because the agreement was insufficient to establish a joint venture and both DMG and American had to possess licenses. DMG and American presented evidence, however, that American was properly licensed, American created the estimate, and only American did the work. Because there remained a factual question about DMG's conduct, the trial court properly denied summary judgment. Moreover, it is

undisputed that American possessed a license, and there is evidence that American performed the work. As a result, regardless of the status of DMG's claims, American would not be barred from seeking payment for the work it performed. OCGA § 43-41-17 (b). As a result, Clarke was not entitled to summary judgment as to American's claims.

2. *Motion for contempt and stricken pleadings.*

Clarke argues that the trial court erred by granting the motion for contempt and striking her answer because the court's order was "overreaching" and was drafted by DMG's counsel. She further asserts that, once her answer was stricken, the allegations in the complaint still showed that DMG unlawfully acted as a contractor and, as such, it could not seek to enforce the contract.

Although Clarke purports to challenge the contempt finding, striking of the complaint, and issuance of a default judgment, the argument she offers in her brief is just a continuation of her claims that DMG was unlicensed and could not collect payment on a void contract. But Clarke cannot challenge the entry of default on the grounds that no claim existed because the trial court entered the default judgment as a discovery sanction. See *Hansford v. Veal*, 369 Ga. App. 641, 644 (1) (894 SE2d 215)

(2023) ("A party who has had a default judgment entered against it as a discovery sanction has forfeited the right to argue that the complaint against that party is inadequately pled.") (citation and punctuation omitted); see also *Jones v. Zezzo*, 162 Ga. App. 281, 283 (290 SE2d 312) (1982) ("By his wilful contempt of the orders of discovery of two judges, appellant has as a sanction suffered a default judgment and thereby forfeited any claim that the cross complaint fails to state a cause of action."). Accordingly, this enumeration provides no basis to reverse the trial court's judgment.

3. *Motion to dismiss or for judgment on the pleadings.*

Clarke next argues that the trial court erred by denying her motions to dismiss and for judgment on the pleadings because DMG was unlicensed and the arrangement between DMG and American was not a valid joint venture. In lieu of any argument, however, Clarke directs this Court to the arguments and case law cited in her motions before the trial court. Although her brief contains a recitation of the relevant procedural history, she has cited no case law and failed to set out any argument concerning the trial court's alleged errors.

"To the extent that [Clarke] is attempting to incorporate by reference additional arguments into her appellate brief, that practice is not approved by this

[C]ourt, and we decline to look in the record for matters which should have been set forth in the brief." (Citation and punctuation omitted.) *Lundy v. Hancock County*, 368 Ga. App. 772, 776 (3) (b) (890 SE2d 92) (2023); see also *R&G Investments & Holdings v. American Family Ins. Co.*, 337 Ga. App. 588, 591 (1) (787 SE2d 765) (2016) (in order to comply with page limit for brief, appellant could not simply incorporate argument from its motions in the trial court to raise argument on appeal); Court of Appeals Rule 23 (a) ("Parties may adopt, and are encouraged to adopt, all or a portion of another brief in the same case or from another case *pending in this Court*. The party adopting language from another brief shall specify precisely what portion of the other brief the party is adopting and list the case number, if different.") (emphasis supplied). Accordingly, Clarke has not shown reversible error.

4. *Motion in limine.*

Clarke next argues that the trial court erred by granting the Appellees' motion in limine, precluding her from arguing that the contract was void because DMG was in violation of OCGA § 43-41-17. But again, she has offered no argument in her brief and instead merely adopts her motions filed in the trial court. Moreover, as she mentions in her brief, the motion in limine excluded several different pieces of

evidence, but she has not argued how or why that evidence should have been admitted at her trial for damages. Instead, she merely directs this court to the filings in the trial court. As noted, doing so is insufficient to place the issue before this Court. *Lundy*, 368 Ga. App. at 776 (3) (b) Court of Appeals Rule 23 (a). Accordingly, there is no basis to find reversible error.[6] *Lundy*, 368 Ga. App. at 776 (3) (b).

5. *Motion to recuse.*

Clarke argues that the trial court abused its discretion by denying her motion to recuse because, as evidenced by its comments, the trial court ignored legal authority in order to ensure its own notions of fairness. Our review is for abuse of discretion, and we cannot say the trial court abused its discretion here. *Serdula v. State*, 356 Ga. App. 94, 97 (1) (845 SE2d 362) (2020); see also *Bass v. Medy*, 358 Ga. App. 827, 830 (2) (854 SE2d 763) (2021).

During a pre-trial hearing, the trial court indicated that it was surprised that there was no criminal case against Clarke for theft by conversion, and expressed the opinion that "people need to be paid for work they do." Based on these comments,

---

[6] In reaching this conclusion, we express no opinion on the merits of her argument that the contract was void because DMG and American violated OCGA § 43-41-17 (b).

Clarke moved the trial court to recuse under Uniform Superior Court Rule (USCR) 25.

Once again, Clarke's brief fails to comply with our rules, as she cites no legal authority to support her argument. Accordingly, we do not address it. Court of Appeals Rule 25 (d) (1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned").

6. *JNOV*.

In her final enumeration of error, Clarke argues that the trial court erred by denying her motion for JNOV. This enumeration presents nothing for us to review.

First, the trial court never ruled on this motion. "This court is for the correction of errors of law, and where the trial court has not ruled on an issue, we will not address it." *Williamson v. Strickland & Smith*, 296 Ga. App. 1, 6 (7) (673 SE2d 858) (2009).

Moreover, Clarke merely adopts the motion she filed in the trial court and presents no other argument in her brief. Thus, we need not address it.[7] *Lundy*, 368 Ga. App. at 776 (3) (b); Court of Appeals Rule 23 (a).

*Judgment affirmed. Miller, P. J., and Land, J., concur.*

---

[7] Even if Clarke could overcome these hurdles, she failed to move for a directed verdict. And because she did not do so, she cannot raise these arguments in a motion for JNOV. *Wilson v. Wernowsky*, 355 Ga. App. 834, 837-838 (1) (846 SE2d 101) (2020).